UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICK ESCAMILLA,
    Plaintiff

v.

JOHN HALLORAN, *et al.*,
    Defendants

No. 24 CV 11090

Judge Jeremy C. Daniel

**ORDER**

The City defendants' motion to dismiss Count I and to "strike any allegation that plaintiff was coerced" [41] is denied. The ASA defendants' motion to dismiss [44] is denied as to Count I and granted as to Counts VI and XI. All defendants must answer the remaining allegations in the complaint by August 15, 2025.

**STATEMENT**

This matter is before the Court on two motions to dismiss: the first is brought by defendants John Halloran, Kenneth Boudreau, James O'Brien, Bernard Ryan, Gerald Carroll,[1] Ellyn Weiss, and the City of Chicago (the "City") (collectively, the "City defendants"), (R. 41),[2] and the second is brought by former Assistant State's Attorneys ("ASAs") defendants Paul Sabin and Sherry Bieder (collectively, the "ASA defendants), (R. 44). The plaintiff, Nick Escamilla, sued these defendants, alleging various federal and state law claims. (R. 1.) Relevant here are Counts I (Coerced Confession under the Fifth and Fourteenth Amendments), VI (Failure to Intervene), and XI (State Law Claim for Willful and Wanton Conduct). (*Id.* ¶¶ 114–22; 156–61; 201–04.)

The following description of events underlying these claims is drawn from the complaint and presumed true for the purpose of resolving these motions. *Vinich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). On February 2, 1993, Hector Olague was shot and killed in Chicago, Illinois. (R. 1 ¶ 18.) At the time, Escamilla was home with his pregnant wife and daughter. (*Id.*) Nonetheless, Escamilla was implicated in the murder by John Willer, who named Escamilla after a lengthy interrogation involving physical and verbal coercive tactics. (*See id.* ¶¶ 24–38.) On February 10, 1993,

---

[1] According to the City defendants, Carroll was incorrectly sued as "Gerry Carroll." (R. 41 at 1.)
[2] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

Escamilla was "arrested . . . without explanation." (*Id.* ¶ 39.) Over the course of eighteen hours, Escamilla was interrogated by several of the City defendants, including Halloran, Boudreau, O'Brien, and Ryan. (*Id.* ¶ 44.) According to the complaint, these defendants screamed at Escamilla, called him a liar, threatened him, and attempted to coerce a statement from him regarding the murder. (*Id.*) Further, it is alleged that Boudreau and Halloran resorted to physical violence, including punching and slapping Escamilla in the head and face, and striking him in the stomach. (*See, e.g.*, *id.* ¶ 45.) When Escamilla asked for a phone call or lawyer, Halloran, Boudreau, and O'Brien intensified their beating of Escamilla. (*Id.*) The ASA defendants, who were felony review prosecutors at the time, were present during at least the "latter portion" of the interrogation and could hear "the [d]efendant [o]fficers striking [Escamilla]." (*Id.* ¶ 51.) "After [eighteen] hours of brutal interrogation, [Escamilla] eventually agreed to adopt the false narrative" fed to him by the defendants. (*Id.* ¶ 50.) The ASA defendants and the City defendants "coached" Escamilla on his statement, which was eventually dictated to a court reporter. (*Id.* ¶¶ 52–53.)

Escamilla was charged with and convicted of Olague's murder. (*Id.* ¶¶ 59, 64.) After his conviction, Escamilla sought relief through post-conviction petitions, (*id.* ¶ 66), including a habeas petition that was heard by the Seventh Circuit, *Escamilla v. Jungwirth*, 426 F.3d 868 (7th Cir. 2005). Though his *habeas* petition was denied, *see id.*, Escamilla's "actual innocence claims were investigated by the Office of the Cook County State's Attorney," which ultimately recommended that the conviction be vacated. (R. 1 ¶¶ 66–67.) Escamilla obtained a Certificate of Innocence on June 12, 2024. (*Id.* ¶ 68.) This lawsuit was filed on October 28, 2024. (R. 1.)

Now, the defendants move to dismiss pursuant to Federal Rule 12(b)(6). Specifically, the City and ASA defendants move to dismiss Count I and to strike any allegation made by Escamilla that his statements were coerced. (R. 41; R. 44 at 6.) The ASA defendants also move to dismiss Counts VI and XI. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Calderon-Ramirez v. McCarment*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "draw[s] all reasonable inferences in [the plaintiff's] favor." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (citations omitted). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not decide the merits." *Triad Assocs. Inc. v. Chi. Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). That said, the Court will not accept legal conclusions or conclusory allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

**Coerced Confession (Count I) – All Defendants**

All defendants move to dismiss Count I of the complaint. (R. 41; R. 44 at 6.) According to the defendants, when the Seventh Circuit heard Escamilla's *habeas* petition, it also

2

"found [that the p]laintiff should be bound to his trial court testimony." (R. 41 at 2.)[3] As a result, the defendants argue, Escamilla should not be permitted to deviate from his trial court testimony where he "admitted to his involvement in the crime and did not dispute his confession or claim he had been coerced." (*Id.* at 7 (emphasis omitted).) But the defendants read too much into the Seventh Circuit's opinion. For one, the opinion makes no explicit finding about whether Escamilla committed perjury, nor whether such testimony was binding; indeed, the dicta posits the supposed perjury in hypothetical form: "*if* Escamilla told the truth . . . ." *Escamilla*, 462 F.3d at 869 (emphasis added). Moreover, the Seventh Circuit's denial of *habeas* relief was based on the timeliness of Escamilla's petition. *Id.* The Court declines the defendants' invitation to, as a matter of law, conclude that Escamilla should be bound by trial testimony—which no party provided to the Court—from a completely separate proceeding, where such a finding was never expressly made, and where the conviction stemming from that trial was ultimately vacated. (R. 1 ¶ 8.) Therefore, the City defendants' motion to dismiss is denied in its entirety, as is the ASA defendants' motion to dismiss Count I. The Court will likewise not strike any allegations regarding Escamilla's purported coercion.

**Failure to Intervene (Count VI) – As Against the ASA Defendants**

The ASA defendants also move to dismiss Escamilla's failure to intervene claim based on qualified immunity. (R. 44 at 4.) "Qualified immunity shields a government official from suit for damages under § 1983 'when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.'" *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Typically, dismissing a motion on qualified immunity grounds is "premature"; that said, "qualified immunity issues should be resolved as soon as possible, which is sometimes at the pleading stage." *Serrano v. Guevara*, 315 F. Supp. 3d 1026, 1034 (N.D. Ill. 2018) (citing *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 915–16 (7th Cir. 2015)). It is Escamilla's burden to show that the ASA defendants are not entitled to immunity. To do this, Escamilla must demonstrate "'(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Sabo*, 128 F.4th at 843 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). A clearly established right is one where the "law is 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Id.* at 844 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "[T]he plaintiff must demonstrate either that a court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right." *Lunini v. Grayeb*, 395 F.3d 761, 769 (7th Cir. 2005).

---

[3] Though the complaint does not include details of Escamilla's purported trial testimony, he implicitly acknowledges testifying at trial through his response to the City defendants' motion. (*See* R. 63 at 5–6.)

3

According to the ASA defendants, they are entitled to qualified immunity on the failure to intervene claim "because there was no clearly established duty for prosecutors to intervene in the misconduct of police officers under the circumstances alleged in the complaint in 1993." (R. 44 at 4.) Escamilla counters that under *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012), "prosecutors who act as investigators are subject to the same rules that apply to police investigators." (R. 59 at 8.) This is true. *See Whitlock*, 682 F.3d at 580 ("The only question is whether a prosecutor who is acting in an investigatory capacity is subject to rules that are any different. We think not."). Therefore, Escamilla asserts, "felony review prosecutors acting in an investigatory capacity can be liable for failing to intervene to stop police misconduct." (R. 59 at 8.)

The problem with Escamilla's position is that "[c]ourts in this district have routinely held that no investigative prosecutorial duty to intervene existed before *Whitlock* in 2012." *Reyna v. City of Chicago*, No. 24 C 10815, 2025 WL 1651255, at *2 (N.D. Ill. June 10, 2025) (collecting cases). In other words, before 2012, a prosecutor's duty to intervene was not "clearly established." Escamilla argues that the duty to intervene "was obvious" to the defendants, "even without an on-point precedent." (R. 59 at 8.) In support, Escamilla avers that one would expect that ASAs understand that investigations should be "conducted in compliance with constitutional requirements," and that they should "decline charges that would be based on coerced and fabricated evidence." (R. 59 at 8–9.) The Court agrees that ASAs should have this basic understanding of how to do their jobs. But that is not the same as demonstrating that there is a clearly established duty for prosecutors to intervene in police misconduct at the time of the events here. As such, Count VI as against the ASA defendants is dismissed.

**Willful and Wanton Conduct (Count XI) – As Against the ASA Defendants**

Finally, the ASA defendants move to dismiss Count XI, which is a state law claim for "willful and wanton conduct." (R. 1 ¶¶ 201–04; R. 44 at 5–6.) "There is no separate and independent tort of willful and wanton conduct." *Krywin v. Chi. Transit Auth.*, 938 N.E. 2d 440, 452 (Ill. 2010). Rather, "[i]t is regarded as an aggravated form of negligence." *Id.* Therefore, "[t]o recover damages based upon a defendant's alleged negligence involving willful and wanton conduct, [Escamilla] must allege . . . that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injury." *Id.* Escamilla also must allege "either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887 (Ill. 2012).

Escamilla's claim for willful and wanton conduct, as pled, is too vague. (*See* R. 1 ¶¶ 202–04); *see also Fletcher v. Bogucki*, No. 20 C 04768, 2021 WL 4477968, at *8 (N.D.

4

Ill. Sept. 30, 2021) (finding that alleging a "duty to refrain from willful and wanton conduct" was "too vague to support a negligence claim"). Escamilla attempts to salvage this negligence claim by pointing to his allegations of a "comprehensive scheme by [the d]efendants to violate his rights." (R. 59 at 10.) But aside from a long recitation of the Illinois Supreme Court's explanation of the duty analysis, Escamilla does not explain how this "comprehensive scheme" actually pleads the existence of a duty, (*id.* at 10–12 (citing throughout *Jane Doe-3*, 973 N.E.2d at 888–90)), let alone breach and cause. *See Fletcher*, 2021 WL 4477968 at *8 ("But he must also plead duty, breach, and cause, and [Escamilla] has not explained why his allegations support such a claim."). Therefore, Count XI as against the ASA defendants is dismissed.

Date: July 25, 2025

_____
JEREMY C. DANIEL
United States District Judge